168 So. 661

## ALABAMA POWER CO. et al. v. CITY OF EUFAULA.

### 4 Div. 883.

Supreme Court of Alabama.

June 4, 1936.

O. S. Lewis and E. S. Thigpen, both of Dothan, for appellee.

Chauncey Sparks and McDowell & McDowell, all of Eufaula, and Martin, Turner & McWhorter, of Birmingham, for appellants.

474

BROWN, Justice.

The bill as last amended seeks to establish and enforce an equitable mortgage on the physical properties—the gas plant and the electric power and lighting plant in the city of Eufaula—now the property of the Alabama Power Company, but previously belonging to complainant, and have the same sold to satisfy a claim predicated on an alleged breach of a certain contract between complainant and Foy & Shemwell, a partnership composed of J. E. Foy, Jr., and Dermot Shemwell, entered into on July 26, 1919, in the first paragraph of which it was stipulated: "That Foy & Shemwell hereby contract and agree to take over the Electric Plant and Distribution System, transmission lines, and everything pertaining to and incident to the Electric Plant and Gas Plant complete, of said city, and the real estate appertaining thereto, at its appraised value, said appraised value to be reached by an engineer to be named by said Foy & Shemwell, and an engineer to be named by said city; and in the event the said engineers so named cannot agree upon the appraised value, the two engineers so named shall select a third engineer, and the appraised value as agreed upon by the majority of said engineers shall be the appraised value of said property; that said Foy & Shemwell agree and contract to assume and retire the Electric Light Bonds of said city, with the interest thereon, at the appraised value of said property; and the said city in consideration of the foregoing hereby contracts and agrees to deliver to the said Foy & Shemwell, by proper conveyances, all of its electric lighting system and gas system in consideration of the foregoing and the other considerations herein set out in said contract."

The second paragraph of the contract "granted unto" said partnership an "electrical and gas franchise" for a period of twenty years, with the usual rights incident thereto, and stipulated that: "Said City exempting from all classes of municipal tax said property set out herein for the period of this contract, and exempting the operators and overseers of said plant as hereinbefore set out, from all license or privilege municipal taxes for the period of this contract."

The third paragraph provided that the partnership should furnish to the city a continuous supply of electricity for municipal purposes at a fixed rate.

Paragraph 4 provided for the character of electricity to be generated and where it should be delivered.

The fifth paragraph stipulated: "The said Foy & Shemwell agree to deliver electrical energy for the purpose of lighting the business houses, storehouses, and domestic lighting, to the consumer from one cent to 12¢ per kilowatt hour, based upon monthly consumption as per scale of rates designated hereinafter domestic rates, and from one to ten horse motor power to the consumer per kilowatt hour, based upon scale of rates designated hereinafter Special Motor Loads from one to ten horsepower, not to exceed 12¢ per kilowatt hour" [Then follow the tables for "Domestic Rate Monthly Consumption" and "Special Motor Loads from one to ten horse-power."] "But the said Foy & Shemwell *agree to pay to said city two cents per kilowatt hour on all lighting used by the consumer, which is designated and known as Domestic Lighting; and said Foy & Shemwell further agree to pay said city 1¢ per Kilowatt Hour on all special motor loads hereinbefore designated from one to ten horse-power; the said amounts to be so paid by the said Foy & Shemwell to said city, to be based upon meter readings, which shall at all times be open to said city,* and the said Foy & Shemwell further agree to furnish said city monthly, an itemized statement showing the amount of Kilowatt Hours used per month for domestic lighting or purposes, and for special motor loads from one to ten horsepower, and the books of the said Foy & Shemwell in so far as the same relate to domestic kilowatt hours and special motor kilowatt hours, from one to ten horse-power, shall be open for inspection by the city

at least quarterly of each year." (Italics applied.)

In the fifteenth paragraph it was stipulated that: "The said Foy & Shemwell agree to execute to the City of Eufaula, a bond of a sufficient amount, payable to the City, conditioned upon its faithful performance, in the retiring of the bonds of the City, as agreed upon in this contract, said bonds to be approved by the Mayor and Town Council of the City of Eufaula."

The other stipulations in said contract are not material to the question in hand.

The bill alleges that said Foy & Shemwell took over and began to operate said properties in May, 1920, and continued to operate the same until February, 1925, but "failed to render a true and correct accounting of the reading of meters, and failed to pay over to the City of Eufaula 2¢ per kilowatt hour, on all light used by the consumers in the City of Eufaula, designated and known as domestic lighting, and failed to pay over to the City of Eufaula 1¢ per kilowatt hour on all motor loads from one to ten (1 to 10) horse-power as therein provided; that the said Foy & Shemwell owes to the said City of Eufaula *as part of the contract price of said electric light and power system and franchise of the City of Eufaula, above set forth,* a large sum of money, accruing by reason of the two and one cent (2¢ and 1¢) respectively, above set out. Plaintiff avers that the said Foy & Shemwell were to pay same based upon meter readings to be made by them, and to furnish the City monthly an itemized statement showing the amount of kilowatt hours used per month for domestic lighting purposes, and for special motor loads from one to ten (1 to 10) horse-power, *and to pay to it the respective sums as part of the purchase price of said system."* (Italics supplied.)

Foy & Shemwell did not consummate the purchase of the property, but assigned their contract to "Georgia-Alabama Utilities, Incorporated," and said corporation undertook to carry out and perform said contract, and in September, 1924, procured the passage of a resolution by the city council submitting to the qualified voters the question of whether or not the city should sell said plants to said corporation. The election was held and the sale approved, and the city council passed an ordinance empowering the mayor and clerk, in the name of the city, to execute a deed to the purchaser. In said ordinance it was provided:

"Section 2. Said conveyance shall be made upon the consideration of $50,000.00, to be paid as follows: $10,000.00 in cash upon the execution and delivery of said indenture of conveyance, together with interest thereon at 8% from July 31, 1919, less such credits as should be applied on said cash amount, and all other agreements contemporaneously herewith entered into; also such as are herein set forth and the balance of $40,000.00 of the City's electric light bonds now outstanding shall be paid by the assumption and agreement to pay by the said Georgia-Alabama Utilities, Inc., the principal and interest of the $40,000.00 of the City's electric light bonds now outstanding promptly when and as said interest and said principal mature, and, in order to secure the prompt and punctual payment of said interest and principal on said bonds, the Mayor may require the Georgia-Alabama Utilities, Inc., to enter into a bond or a deposit agreement, in accordance with Paragraph Fifteenth on page 8 of said contract with Foy & Shemwell, but the acceptance of the deposit of securities agreement by the Mayor shall not be held to waive any of the terms of said contract, nor change or alter the same except in said securities agreement in lieu of the bond required by said paragraph.

"Section 3. The Mayor shall require to be incorporated in said indenture of conveyance an agreement for the retention of a vendor's lien *on the real property therein sold in favor of the City of Eufaula until the whole of said bonds, including both principal and interest, is paid in full."* (Italics supplied.)

The deed executed by the city of Eufaula to Georgia-Alabama Utilities, Inc., first reciting the history of its dealings with said partnership and the assignment by said partnership of the contract to the grantee—omitting the covenant of warranty and the description of the property—is in the following words:

"Know All Men by These Presents, that for the purpose of execution carrying out and fulfilling the contract with Foy & Shemwell, hereinabove described and each and every covenant and agreement thereof, and for the purpose of making a conveyance in accordance with the said contract to the party now entitled thereto, and for and in consideration of the sum of Ten Thousand Dollars ($10,000.00) cash to it in

hand paid by the Georgia-Alabama Utilities Inc., the receipt whereof is hereby acknowledged, and in further consideration that the Georgia-Alabama Utilities, Inc., does hereby assume and promise to pay the interest, as the same accrues and matures, on $40,-000.00 of the bonds of the City of Eufaula, known as the City of Eufaula Electric Light Bonds, issued and outstanding, and does assume and promise to pay and retire said bonds when the same mature and fall due, both as interest and principal, the City of Eufaula does hereby grant, bargain, sell and convey unto the Georgia -Alabama Utilities, Inc., its successors and assigns, the following described property, located in the City of Eufaula, Barbour County, Alabama, to-wit: [Then follows a description of the property and the covenant of warranty.]

"The said Georgia-Alabama Utilities, Inc., agrees to pay the interest on said $40,000.00 of the City of Eufaula's electric light bonds outstanding as the same accrues and matures and to pay and retire at maturity thereof the principal of said $40,-000.00 of the City of Eufaula's electric light bonds now outstanding which said $40,000.00 of electric light bonds were issued by the City of Eufaula on the 1st day of September, 1911, in the denomination of $1,000.00 each, and which said bonds mature and fall due on the 1st day of September, 1941, and the interest on the same matures semi-annually on the first day of March and September of each year during said period at the Chase National Bank of New York, New York, and to secure the punctual performance of this agreement the said Georgia-Alabama Utilities, Inc., has entered into an agreement with the City of Eufaula contemporaneously herewith whereby deposit of adequate securities is to be made with the First National Bank of Birmingham, Alabama, by the said Georgia-Alabama Utilities, Inc., said agreement is herein referred to and made a part of this conveyance as is set out herein. It is further agreed between the parties hereto that the failure to perform any part of said agreement by the said Georgia-Alabama Utilities, Inc., or by its successors and assigns, shall, in addition to other rights named in said agreement, bestow upon the City of Eufaula all the right of a vendor, including a vendor's lien upon the real property herein conveyed, it being agreed that the value of real property conveyed is the sum of $50,000.00. This conveyance is made pursuant to and in execution of said contract with Foy & Shemwell hereinabove described whose every provision is agreed to by the parties hereto."

Subsequent to the execution of said deed, Georgia-Alabama Utilities, Incorporated, Gulf Electric Company, the Houston Power Company, and the Alabama Power Company were consolidated under the name of Alabama Power Company; the consolidated corporation taking over all the properties and assuming all the liabilities of the several corporations so consolidated.

At certain intervals after the execution of the conveyance and before the consolidation of the several corporations, the properties were operated by the Georgia-Alabama Utilities, Inc., and Gulf Electric Company, and subsequent to the consolidation by the Alabama Power Company.

The bill avers in its twelfth paragraph that said corporations, during the time of their respective operations, were under obligations to make correct monthly reports to the complainant of the quantity of electricity furnished to domestic patrons, and pay to complainant the amount due as provided in the original contract between complainant and said plaintiffs; that they respectively "failed to make correct reports and statements to the City of Eufaula of the meter readings and the amount due the City * * * under the Foy & Shemwell contract, and thereby deprived the City of Eufaula of a large amount due thereunder as a part of the purchase price of the property described in the said Foy & Shemwell contract."

The thirteenth paragraph avers that the meter records are in the possession of the "respective corporations, covering the period of time each undertook to carry out and perform the same; that plaintiff has no way of ascertaining the true state of account, and the amount due by the respective corporations," etc.

The bill seeks discovery and relief on the theory that the indebtedness alleged to have accrued from the failure of the respective defendants to make correct monthly reports respecting the exaction based on the quantity of electricity consumed by domestic users and motor loads from one to ten horse power arising under said contract.

There is no averment that the $50,000 fixed as the price of the physical properties has not been paid.

The bill's equity must stand or fall upon the interpretation of the last-quoted paragraph of the deed in the light of the circumstances surrounding the parties alleged in the bill. The clear import of the language, "It is further agreed between the parties hereto that the failure to perform any part of *said agreement* by the said Georgia-Alabama Utilities, Inc., or by its successors and assigns, shall, in addition to other rights named in said agreement, bestow upon the City of Eufaula all the right of a vendor, including a vendor's lien upon the real property herein conveyed, it being agreed that the value of real property conveyed is the sum of $50,000.00," was to confer a lien to secure the payment of the stated purchase price. This is clearly indicated by the city ordinance authorizing the execution of the deed and its designation as a "vendor's lien." (Italics supplied.)

While the bill alleges that the exaction of the 2 per cent. payable to the city under the contract on the quantity of electricity used by domestic consumers, and the 1 per cent. on motor loads, constituted part of the consideration for the physical properties, it is clear that this is but a conclusion of the pleader. It clearly appears that such exaction was a part of the consideration for the contract, but the contract covered more than the physical properties. It granted a franchise for the operation of the business, and an exemption from taxation, and clearly it was the intent and purpose of the contracting parties that said exaction was in consideration of such franchise right and exemption from taxation.

If this provision of the contract was breached by the person operating the plant, the remedy is against such operator, and an action at law affords a complete and adequate remedy.

Our judgment therefore is that the bill is without equity and the court erred in overruling the demurrers to the bill.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and KNIGHT, JJ., concur.